IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUIE F. SEDILLO,

        Petitioner,

v.                                      CIV 05-1241 JH/KBM

HARRY TIPTON, et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Louie Sedillo's petition for a writ of habeas corpus under 28 U.S.C. § 2254, where he raises three grounds for relief. *See Doc. 1.* He also moves for appointment of counsel. *See Doc. 3.* Respondents move to dismiss on the ground that not all of the claims are exhausted and, in the alternative, move for dismissal on the merits. *See Docs. 14, 15.* I recommend that Respondents' motion be granted in the alternative, and that Sedillo's entire petition be dismissed on the merits with prejudice. Throughout this recommendation, all citations to exhibits are those attached to Respondents' Answer. *See Doc. 16.*

### I.  AEDPA Standards & Habeas Rules

Because Sedillo filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997).  Under AEDPA, a federal court cannot grant a writ of habeas corpus unless:  (1) the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by" Supreme Court precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2).

These standards apply regardless of whether any reasoning accompanies a state court decision, so long as the state court did not dismiss the claim on a procedural ground. *See, e.g., Cook v. McKune,* 323 F.3d 825, 831 (10th Cir. 2003). That is partially the situation here. Furthermore, a federal court can dismiss a petition on the merits even though all of the claims have not been exhausted in the state courts. *See, e.g., Moore v. Schoeman,* 288 F.3d 1231, 1235 (10th Cir. 2002); *McDaniel v. Watkins,* 140 Fed. Appx. 18, 20-21 (10th Cir. 2005); *Cordova v. Soares,* 139 Fed. App. 127, 128 (10th Cir. 2005), *cert. denied,* ___ S. Ct. ___ , 2006 WL 386917 (2006); 28 U.S.C. § 2254(b)(2). That, too, is the situation here.

Respondents chose not to submit every state court record that may be relevant, and this leaves some gaps in a precise rendition of the entire factual background. For a proper perspective of Petitioner's claims and arguments, I find it necessary to discuss the factual background in detail, even though there is no need to expand the federal habeas record prior to disposition.

Ultimately, only a few critical facts are necessary for resolution of the federal claims, and those facts are plain from the partial record before me. *See* Rules 5(c)-(d) and 7, Rules Governing Section 2254 Cases in the United States District Courts. Because all of the claims can be resolved on the record as it stands presently before me, no evidentiary hearing is required. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts.

## II.  Background

### A.  1998 Santa Fe Charges, Plea, And Sentence

Petitioner was already incarcerated at the New Mexico State Penitentiary in Santa Fe, when he was charged with possession of a deadly weapon and aggravated assault of a peace officer, presumably a prison guard.  Santa Fe prosecutors initiated two criminal cases.  The first, numbered 98-304, charged Sedillo with the January 1998 possession of a deadly weapon.  The second, numbered 98-621, charged him with possession of a deadly weapon and assault that occurred in May 1998.  The cases evidently were not formally consolidated, but they were treated together for the purposes of a plea agreement.  *See Exhibit A* at 1-2; *Exhibit B* at 2.

Represented by counsel, Sedillo entered into a written plea agreement in November 1998 and pleaded no contest to both counts of case number 98-621.  He entered the plea only to the charges in 98-621, and this fact was emphasized by interlineation on the plea agreement.  *See Exhibit B* at 1.  In return, the State specifically agreed to dismiss the 98-304 case – "The following charges will be dismissed  . . . Count One, Possession of a Deadly weapon by a Prisoner, in SF 98-304."  *Id.* at 2.  The State also agreed to an "initial sentence" cap of seven years, but specifically contemplated that probation and parole terms would be imposed as part of the overall sentence:

> State does not oppose running the counts concurrent.  The State will cap its initial request for sentence at seven years.  This agreement applied to initial sentencing only.  If defendant violates the terms of this agreement, probation or parole, the State reserves the right to ask for incarceration for any time remaining on the original exposure.

*Id.*

Due to Sedillo's habitual offender status, the trial judge enhanced the sentences he imposed.  The sentences ran concurrently, however, and the judge also suspended almost half of the total sentence so that Petitioner would serve six years.  Thus, the sentence of incarceration Sedillo received fell within the agreed seven-year cap.  The judge further imposed a two-year term of parole and a five-year term of probation.  Both parole and probation were accompanied by specific conditions including, "obey[ing] all rules, regulations and orders of the Probation Authorities [and] all federal, state and local laws or ordinances."  *Exhibit A* at 2.

The judgment reflected the above sentence, and evidently was filed in both criminal cases.  However, the judgment neglected to dismiss case number 98-304.  *See id.*

### B.  Multiple Parole/Probation Violations Result In Sedillo's Arrest And Parole Revocation In Albuquerque

Petitioner was released before his six-year term expired, though the record does not reveal precisely when he was released or when his two years of parole began.  It does indicate that his five-year probation period began on June 12, 2003, and that as of that date, he was still on parole.  Sedillo was living in Albuquerque where he had family, was working and attending school, and he reported to the "Probation and Parole Division" there.  The "Probation and Parole" officer to whom he reported was Robert Ramirez.   *See Exhibit C,* Attachment A at 1-3 (hereinafter "*Probation Violation Report*"); *see also Exhibits J, Q.*  Sedillo later sued Ramirez in this court under § 1983 for religious discrimination, and for the remainder of this report, I will assume that Ramirez was the only parole and probation officer Sedillo saw.  *See Sedillo v. Ramirez, et al.,* CIV 04-380 WJ/WDS *(Doc. 1).*

Within four months of starting probation, Sedillo violated its terms.  By October 2003, for

example, he was implicated with others in credit card fraud crimes.  A postal inspector told

Ramirez that the District Attorney would not follow through with charges because of the small

dollar amount.  Nevertheless a "Preliminary Probation Violation was submitted."  *Probation*

*Violation Report* at 2; *see also id.* (attachment to report).

By November 2003, Sedillo tested positive for cocaine, spent three days in jail, and was

ordered into drug counseling.  Again, a "Preliminary Probation Violation Report was submitted."

*Id.* at 2.  The following month, he refused to take a random urinalysis test Ramirez requested,

signed out of the probation office, and never returned.  *Id.*  When a call to Sedillo's residence in

late December yielded no answer, the Albuquerque Probation and Parole Division considered him

to have absconded from supervision.  *See id.* at 2-3.

A warrant issued for Sedillo's arrest on December 23, 2003.  According to Sedillo, he was

arrested in Albuquerque on January 15, 2004 for a "parole violation," and the only basis for the

alleged violation was credit card fraud criminal proceedings.  *See Exhibit D* at 1; *Exhibit J* at

"Facts" ## 1, 3; *see also Exhibit H* at 1.   However, Sedillo and his co-defendants were not

indicted in Albuquerque district court on the credit card charges until a few days after he was

arrested.  *See State v. Sedillo,* D-202-CR-200400160 (1/20/04 indictment, docket sheet available

through the New Mexico Courts website on the Internet, http://164.64.40.11/caselookup/jsp/

CaseLookupSearch.jsp); *State v. Morris,* D-202-CR-200400159 (same); *State v. Carrillo,* D-202-

CR-200400158 (same).  Instead, it appears that the bench warrant issued not only for his

implication in the credit card crimes, but also for the other conditions of release that he violated –

testing positive for cocaine, failure to take the urinalysis and absconding.  *See Probation Violation*

*Report* at 3 (dated in January 12,  2004, requesting that "a Bench Warrant be issued to replace the

current Arrest & Hold" ).

Although these conditions violated the terms of both parole and probation, the parole

revocation proceedings were initiated first and concluded first.  Sedillo avers that two parole

revocation hearings were held in early February 2004 – one on February 5th and the other on

February 11th.  *See Exhibit J* at "Facts" # 2.  There are no records of the hearings before me save

for one page from a "Preliminary Parole Revocation Hearing Summary" that was printed on

February 16, 2004.  Sedillo wrote notes on this page and attached a copy to his petition for

certiorari to the New Mexico Supreme Court.  *See Exhibit S,* attachment (hereinafter "*Probation*

*Notes*").[1]  It indicates that Sedillo's now ex-wife testified at a hearing, and accused him of

committing battery, child abuse, and other domestic crimes on January 4, 2004 before his arrest.

*See id.*  It also indicates that Ramirez testified about his discovery of  Sedillo's involvement with

the credit card fraud and his attempt to reach Sedillo after he failed to report back to the office.

*See id.*

According to Sedillo, his parole was revoked on March 10, 2004 due to the pending credit

card fraud charges and his failures to submit a urinalysis sample or report to Ramirez.  *See*

*Exhibit D* at 1, *Exhibit J* at "Facts" ##2-3.  From this Court's own records, I can determine that

he remained imprisoned during the parole proceedings at the Bernalillo County Metropolitan

Detention Center ("BCMDC") and in mid-March 2004 he was moved from to the Central New

---

[1] This one-page document was also attached to Sedillo's federal § 1983 lawsuit, filed on April 6, 2004.  *See Sedillo v. Ramirez, et al.,* CIV 04-380 WJ/WDS.  Exhibit S in this case, which is lengthy and not paginated, contains the entire federal § 1983 complaint.

Mexico Correctional Facility ("CNMCF") in Los Lunas.[2]  Sedillo was scheduled to be released from prison on the parole revocation sentence on October 27, 2004.  *See Exhibit H* at 2.

###### C.  *Santa Fe Institutes Probation Revocation Proceedings And The Matter Languishes*

While the Albuquerque parole revocation events were proceeding, the First Judicial District prosecutors in Santa Fe instituted probation revocation proceedings.  On February 18, 2004, Deputy District Attorney Kathleen Ayala moved to revoke Sedillo's probation.  Apparently she was unaware Sedillo had been arrested and incarcerated in Albuquerque for over a month as of the date she filed her motion.  *See, e.g., Exhibits C, H.*  To her motion, she attached the probation violation report by Ramirez dated January 12, 2004, three days before Sedillo was arrested in Albuquerque, which stated Sedillo was considered a "fugitive."   Ayala only served a copy of the motion on the Public Defender's office in Santa Fe, which had represented Sedillo in the 1998 plea.  *See Exhibit C* at 2; *see also Exhibit A* at 3 (counsel in the 1998 plea was Laurie Knight); *Doc. 1* at 17 (Sedillo indicates Laurie Knight was a public defender in Santa Fe).  She also only filed the motion in case number 98-304 – the case that was supposed to have been dismissed.  The next day, the district judge issued a Bench Warrant under case number 98-304.  *See Exhibit H,* at 2; *Exhibit J,* attachments.

The matter languished for five months or until the Summer 2004, when Sedillo filed five

---

[2]  *Compare Sedillo v. Ramirez, et al.,* CIV 04-380 WJ/WDS (*Doc. 1* at 1, § 1983 action alleging religious discrimination by Ramirez, signed 3/16/04 in CNMCF and filed 4/6/04 and currently pending); *and Sedillo v. Pino, et al.,* CIV 04-379 MV/RHS (*Doc. 1* at 13, *Doc. 2* at 2; habeas petition claiming he was entitled to a lump sum adjustment of good time credits and motion to proceed *in forma pauperis,* signed 3/18/04 at CNMCF and filed 4/6/06; dismissed for failure to exhaust state remedies); *with Sedillo v. Tipton,* CIV 04-378 JB/DJS (*Doc. 1* at 6; § 1983 action alleging denial of medical care at BCMDC signed 2/19/04 and filed 4/4/06; dismissed on merits).

*pro se* motions between July 29, 2004 and October 5, 2004.[3]  On the one hand, Sedillo claims he

became aware of the motion to revoke probation through the February Bench Warrant in 98-304

at least by July 2004.  *See, e.g., Exh. D* at 1.  On the other hand, he claims that the warrant was

not executed until months later, on October 27th, the day he was to be released from the parole

violation sentence.  *See Exhibit Q.*[4]

      In any event, unlike Ms. Ayala, Sedillo filed his pleadings in ***both*** of the Santa Fe criminal

cases, using for the caption 98-621 and 98-304 as had the criminal judgment.  *See, e.g., id.*  He

asked the court to dismiss the probation violation motion and to simply give him "time served" for

the time he had spent in jail on the parole violation.  He further asked the court to move quickly

and do so before mid-October, when he was due to be released on the parole violation sentence.

None of his motions show a certificate of service on anyone, neither Ayala nor the various

attorneys who are representing or have represented him.  *See Exhs. E-G; see also Exhibit S,*

attachment (request for evidentiary hearing dated 8/9/04).

      Neither Ayala, nor the prosecutor later involved with the motion, nor the state court,

acted on any of these motions.  The court never did comment on whether or when it became

aware of the motions.  Ayala claims that she had no idea where Sedillo was until October 18,

---

   [3]  It is not clear from his state court submissions where he was housed when he filed the first two
motions, but presumably he was still in the Los Lunas facility.  *See Exhibit D* (dated 7/29/04); *Exhibit S,*
attachment (request for evidentiary hearing dated 8/9/04).  By September 2004, he was located at the
Penitentiary in Santa Fe and specifically noted that he was anticipating his release from the parole
revocation sentence in mid-October.  *See Exhibits E-G; see also Sedillo v. Ramirez, et al.,* CIV 04-380
WJ/WDS *(Doc. 25).*

   [4]  Unidentified and largely illegible handwriting on the warrant, which may be the notification of
the return, mentions October 27, 2004 or the day of Sedillo's parole violation sentence release date.  The
document appears to have a file-stamp, but the details of the stamp are illegible.  *See Exhibit J,* attachment.

2004, when she discovered where he was located and that same day filed a motion for a hearing

on the probation revocation.  *See Exhibit H* at 2; *Exhibit L* at 7.  It also appears that the

prosecution was unaware whether or when the bench warrant  had been served.  *See Exhibit L* at

2, 5, 6; *see also supra* note 4.

The prosecution further asserted that it was Sedillo's fault that the prosecutors and the

state court were unaware of the motions he had filed, because Sedillo did not serve copies on the

prosecutor or provide extra copies to the clerk as required.  Evidently, clerk's office staff did not

require Sedillo to provide the missing necessary copies, make copies for the judge, make copies

for the prosecutor, or even tell the judge and the prosecutor that the *pro se* motions had been

filed.  Furthermore, it appears that neither the court nor the prosecutors monitored their cases for

new filings.  *See Exhibit H* at 1-2; *Exhibit L* at 3-4.

### D.  Probation Revocation Proceedings Commenced In Fall 2004, And Were Immediately Delayed – In The Interim, Domestic Abuse Charges Are Initiated And The Credit Card Charges Are Dropped

The prosecutors made confusing and inconsistent assertions as to Sedillo's actual

whereabouts after October 27, 2004.  On October 25, 2004, just two days before he was to be

released on the parole sentence, Sedillo was indicted in Albuquerque on the domestic abuse

allegations that his ex-wife voiced eight months earlier during the parole revocation proceedings.

*See Exhibit H* at 2.  One prosecutor believed that Sedillo was released from prison after his parole

sentence expired.  *See Exhibit L* at 6.  On the other hand, Ayala maintained that Sedillo was

incarcerated from January 2004 onward.  *See Exhibit H* at 2.  Sedillo asserts the same.  *See*

*Exhibit Q.*  According to the change of address notifications Sedillo filed in matters pending here,

Ayala's version is the correct one, and Sedillo he has been continually incarcerated from January

2004 to the present.[5]

    According to Sedillo, the first attempt at a probation violation hearing was scheduled for

December 8, 2004, where he says he addressed the judge.  According to the prosecution, the

hearing was then continued to January 10th 2005.  *See Exhibit L* at 4; *Exhibit Q* at 2.  In the

interim, as the postal inspector previously predicted, on December 21, 2004, the Albuquerque

prosecutors decided not to go forward with the credit card fraud charges against Sedillo and

dropped the prosecution.  *See Exhibit J,* Attachment 1.

    Meanwhile, the domestic abuse charges were proceeding in Albuquerque, and counsel for

Sedillo there raised competency issues and had Sedillo evaluated.  *Exhibit R* at 1-3; *see also*

*Exhibit L* at 4, 6; *Exhibit N* at 3.  In light of the evaluation, the probation revocation proceedings

in Santa Fe apparently were on hold.  The only matters of record that occurred soon after

December 2004 were the State's written response to the prior *pro se* motions and three

additional *pro se* motions, including a motion to dismiss on the grounds that the delay in the

proceedings was prejudicial and a motion for a writ of habeas corpus.  *See Exhs. H-K, Q; see also*

*Exhibit L* at 2, 4.

    On April 25, 2005, the State filed an amended motion to revoke probation, in order to

---

    [5]  In a notice filed October 26, 2004, Sedillo noted that he was going to be "discharged" but
thereafter was "going to Santa Fe County Jail with a no bond hold, then to ALB county jail for trial on
pending charge on 6 December, and hope to be out in the next 90 days."  He therefore asked for
correspondence to be sent to his aunt, who would forward the mail to him.  *Sedillo v. Ramirez, et al.,* CIV
04-380 WJ/WDS *(Doc. 25)*.  By January 12, 2005, he notified this Court that he was "still incarcerated" in
Albuquerque at BCMDC.  *Id.* (Doc. 26).  In  November 2005, when he filed the instant habeas petition, he
was still incarcerated in Albuquerque at BCMDC.  *See Doc. 1.*  In December 2005, he was moved to
CNMCF in Los Lunas.  *See Doc. 9; see also Sedillo v. Ramirez, et al.,* CIV 04-380 WJ/WDS *(Doc. 41)*.
In January 2006, he was moved to the Southern New Mexico Correctional Facility in Las Cruces.  *See
Doc. 13; see also Sedillo v. Ramirez, et al.,* CIV 04-380 WJ/WDS *(Doc. 42)*.

raise the pending domestic abuse charges as a ground for revocation.  This motion was filed in the correct case 98-621.  *See Exhibit R* at 3.  According to Sedillo, the court held a probation violation hearing soon after the amended motion to revoke was filed.  Thereafter, the State responded to the rest of the pending *pro se* motions.  *See Exhibit S* at 3, *Exhibit L.*  Trial judge Michael E. Vigil eventually entered written findings on the *pro se* motions on October 6, 2005. *See Exhibit R.*

Judge Vigil first found that Sedillo was competent because standby defense counsel in the revocation proceeding represented that Sedillo's defense counsel in the Albuquerque domestic abuse proceeding had told her that he "had seen the forensic evaluation report and that defendant was determined to be competent to stand trial."  Judge Vigil thus "permitted" Sedillo to represent himself with standby counsel in the probation revocation proceeding.  *Exhibit R* at 1-2.

Judge Vigil next rejected Sedillo's contention that the 1998 plea was illegal because it did not mention probation.  The judge stated that he found "the plea agreement does provide for the possibility of probation if any portion of the maximum sentence is suspended."  *Id.* at 2.

He did, however, ***agree with Sedillo*** that Ayala's original motion to revoke was not acted upon in a timely fashion and, though some of the delay was due to Sedillo, "on balance the defendant's due process right to a speedy resolution of a probation violation has been violated." *Id.* at 3.  He therefore ***granted*** Sedillo's motion to dismiss Ayala's revocation motion, "mistakenly filed in [98-304]."  *Id.* at 3.

Judge Vigil nevertheless noted that the amended motion to revoke probation, filed in the right case, was based on

different violations than those contained in [Ayala's motions],

11

> including the new [domestic abuse] charges pending in Bernalillo
> County.  Additionally, any delay in resolving those issues has been
> largely due to actions of defendant's counsel in raising competency
> as an issue. . . .  Therefore, defendant's motion to dismiss is
> DENIED and an evidentiary [hearing] will be set on the probation
> violation.

*Id.* at 3.

Thereafter, Judge Vigil revoked probation on the basis of the domestic abuse allegation. *See Exhibit N* at 2.  He sentenced Sedillo to a total of three years incarceration but suspended two years and six weeks of that sentence, and did not place Sedillo on probation.  Because Sedillo had been, and continued to be, incarcerated at BCMDC on the domestic abuse charges pending in Albuquerque, the Judge ordered that Sedillo " receive credit for pre-sentence confinement from April 25, 2005 [the date the amended motion to revoke was filed] until delivery to the place of incarceration." *Id.* at 3.  As I understand it, depending on when the abuse charge proceedings concluded, Sedillo would have little, if any, time remaining on the probation violation sentence.

Sedillo's petition for a writ of certiorari regarding the October 6, 2005 ruling on his motions was denied.  He also filed other motions with the district court, the status of which are not known.  *See Exhibit O* at 1-2, *Exhibit P; Exhibit S* (attachments); *Exhibit T; Exhibit U* (attachments); *Exhibit V*.

### III.  Analysis

Petitioner claims that his 1998 sentence that included a term of probation was illegal because the written plea agreement "does not provide for any probationary term." *Doc. 1* at 13. The state judge found that Sedillo's factual premise for this claim was mistaken because "the plea agreement does provide for the possibility of probation if any portion of the maximum sentence is

suspended." *Exhibit R* at 2. The trial judge's finding of what the plea agreement does provide is

presumed correct unless Petitioner shows otherwise by clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1); see also *Wiggins v. Smith*, ___ U.S. ___, 123 S. Ct. 2527, 2539 (2003). As noted

in the factual background above, a section of the plea agreement specifically and clearly

contemplated that probation and parole terms would be imposed as part of the overall sentence.

Since the factual premise for the claim fails, I cannot conclude that the trial judge's decision is an

"unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. §§

2254(d)(2), much less contrary to established Supreme Court precedent or an unreasonable

application thereof, *id.*, § 2254(d)(1). Accordingly, this claim should be dismissed on the merits.

Petitioner next asserts that he was denied a "speedy" probation revocation. He calculates

that from the date of the Ayala filing, it took "almost 11 months to get me in front of the Judge

for a hearing." *Doc. 1* at 10. This claim neglects to mention that the trial judge *agreed* with

Sedillo and dismissed the original revocation motion because of the undue delay. Petitioner does

not argue that the proceedings were not speedy as to the *amended* motion to revoke. Thus, his

claim as to the original revocation motion is moot and cannot be addressed here.

Construed liberally, Petitioner finally claims that because the original motion was filed in

the wrong case, he was put in double jeopardy with regard to the amended motion to revoke. *See*

*Doc. 1* at 8. However, parole or probation "determinations are not viewed as criminal

punishment subject to the Double Jeopardy Clause." *Kell v. United States Parole Commission,*

26 F.3d 1016, 1020 (10th Cir. 1994); *see also e.g., United States v. Miller,* 797 F.2d 336, 340 (6th

Cir. 1986) ("Several circuits have indicated that the Double Jeopardy Clause simply does not

apply to parole or probation revocation proceedings."). Thus, a delay in probation revocation

proceedings alone will not support a due process violation absent demonstrable prejudice.

> The loss of liberty entailed in parole revocation requires that parolees be accorded due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 781 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972). Among other things, due process requires a preliminary revocation hearing "as promptly as convenient after arrest," and a final revocation hearing "within a reasonable time after the parolee is taken into custody." *Morrissey,* 408 U.S. at 485, 488. However, delay in providing these hearings does not, per se, constitute a violation of due process entitling an accused parole violator to immediate release. *McNeal v. United States,* 553 F.2d 66, 68 (10th Cir. 1977). Instead, "to establish a legal right to habeas relief, the delay, taking into consideration all the circumstances, must also be prejudicial." *Id.; see also Harris v. Day,* 649 F.2d 755, 761-62 (10th Cir. 1981). This is the well-established rule. *See Meador v. Knowles,* 990 F.2d 503, 506 (9th Cir. 1993) (due process violation occurs only when delay is both unreasonable and prejudicial); *Villarreal v. United States Parole Comm'n,* 985 F.2d 835, 837 (5th Cir. 1993) (154-day delay between arrest and final hearing did not violate due process absent a showing of prejudice); *Heath v. United States Parole Comm'n,* 788 F.2d 85, 89 (2nd Cir. 1986) (predicating habeas relief upon showing of prejudice or bad faith) [, *cert. denied,* 479 U.S. 953 1986)]; *Sutherland v. McCall,* 709 F.2d 730, 732 (D.C.Cir. 1983) (absent prejudice, proper remedy for delay is not habeas relief, but rather a writ of mandamus compelling compliance with statutory time periods); *State v. Chavez,* 694 P.2d 927, 930 (N.M. Ct. App. 1985) (showing of prejudice required); *State v. Sanchez,* 612 P.2d 1332, 1335 (N.M. Ct. App. 1980) (same) [, *cert. denied,* 94 N.M. 675 , 615 P.2d 992 (1980)).

*Paul v. McFadin,* 117 F.3d 1428 (10th Cir.) (unpublished), *cert. denied,* 522 U.S. 1005 (1997);

*see also e.g., Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973); *Morrissey v. Brewer,* 408 U.S. 471,

488 (1972).

Here, Petitioner had a prompt parole revocation proceeding after his arrest, and during

those proceedings Sedillo had a chance to present his side of the story in light of his ex-wife's

allegations of domestic abuse. According to Sedillo himself, the bench warrant was served on him

at some point while he was serving the parole violation sentence.  Technically then, his "custody" was not as a result of the pending probation revocation proceedings, and the executed bench warrant should have acted in effect as a detainer against his release at the completion of his parole violation sentence.

As it turned out, for whatever reasons, the State dragged its heels on the probation violation proceedings for some eight months between the filing of the original probation revocation and moving for a hearing.  But Petitioner does not claim, either in the state courts or here, that this delay impacted his ability to contest the allegations upon which his probation was ultimately revoked.  To the contrary, he just wanted the State to complete both parole and probation revocation proceedings at the same time, and consider the whole matter over with as of the end of his parole revocation sentence.  As practical as that request seems, nonetheless, I have not found a ***constitutional*** basis requiring the State to proceed in that fashion.  Indeed, as the Supreme Court noted:  "This Court has never held . . that a prisoner subject to a probation-violation detainer has a constitutional right to a speedy probation-revocation hearing."  *Carchman v. New Jersey Dept. of Corrections,* 473 U.S. 716, 733 n.10 (1985).  There are simply no allegations or evidence in the record that any of the delay even between the January 2004 arrest and the October 2005 revocation decision resulted in any prejudice.  As such, the claim, though unexhausted, should also be denied.[6]

---

[6]  *See Barton v. Malley,* 626 F.2d 151 (10th Cir. 1980) (habeas remedy of release from incarceration not warranted for due process violation in probation revocation proceedings where violation no longer had any actual bearing on the reason for incarceration); *Kartman v. Parratt,* 535 F.2d 450,  454-555 (8th Cir. 1976) (probation revocation proceedings must be held within a reasonable time under *Morrissey* but general allegations of lost witnesses are not sufficient to show that delay in revocation proceeding resulted in prejudice); *Smith v. Snodgrass,* 112 Fed. Appx. 695 (10th Cir. 2004) (case originating in this Court CIV 03-142, where two years elapsed between state motion to revoke probation

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be dismissed with prejudice on the merits, despite the presence of an unexhausted claim.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

and hearing, during which time *pro se* petitioner not in custody battled the motion in state and federal court; in affirming, Tenth Circuit noted "This is not a case of process withheld or postponed for some extended period; on the contrary, there has been a surfeit of process, including many motions and pleadings from petitioner, that has delayed resolution of the matter since the State first moved for revocation in 2001. Moreover, the State's efforts to revoke probation do not stem from a single incident receding into an unrecoverable past; the State has repeatedly moved for revocation based on, among other things, petitioner's continuing failure to make restitution.").